# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00947-SCT

*DEANA E. GALLOWAY SETTLE*

*v.*

*HAROLD L. GALLOWAY, JIMMIE L. GALLOWAY AND RICHARD GALLOWAY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/93 |
| TRIAL JUDGE: | HON. GLENN BARLOW |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RICHARD W. HAMILTON |
| ATTORNEY FOR APPELLEES: | DONALD P. SIGALAS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 10/24/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/14/96 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The matter before the Court involves an appeal from a grant of specified visitation rights to the paternal grandparents of a child in lieu of the child's father who is unable to exercise his visitation rights as a result of his service in the United States Navy. We hold that the trial court properly found in accordance with § 93-16-3 of the Mississippi Code that it was in the best interest of the child that the paternal grandparents should be granted visitation with their minor grandson. Although the trial court's grant of visitation to the paternal grandparents on every other weekend may be considered excessive, we do not find that the Chancellor abused the wide range of discretion he is afforded.

## I.

¶2. On July 15, 1991, a Final Judgment of Divorce was entered in the Chancery Court of Jackson County, divorcing the appellant, Deana E. Galloway Settle (hereinafter, Deana Settle) and one of the appellees, Richard L. Galloway. Within this judgment, the court incorporated a temporary judgment entered on December 14, 1990, which granted paternal grandparental visitation of the four-year-old child, Chase Galloway, to the appellees, Harold and Jimmie Galloway. However, the court stated that such visitation "is in lieu of visitation by Richard L. Galloway and not in addition to his visitation." The court further stated that "any action for statutory grandparental rights is a separate and distinct cause from this action and the clerk is ordered to establish a separate file and cause number for any

such action."

¶3. On June 17, 1992, a petition to establish statutory grandparental visitation, which was originally filed in the divorce action on December 11, 1990, was transferred from the divorce action and assigned a new cause number. The petition averred that Richard Galloway was a member of the United States Navy, stationed at the Great Lakes Training Center, Great Lakes, Illinois, and could not exercise any visitation privileges. It further asserted that the only opportunity for the child to gain exposure to his father's family was through the grant of visitation to the paternal grandparents outside of the privileges granted to the father.

¶4. On March 23, 1993, the Chancery Court of Jackson County, Mississippi ruled that Harold and Jimmie Galloway should be granted visitation with their minor grandson, Chase, "in that without this contact with the grandparents there would be little exposure or knowledge of the child's father." The Galloways were allowed visitation on every other weekend as well as Easter and Thanksgiving days on alternating years. The appellant, Deana Settle, appeals from this ruling stating that the Chancellor abused his discretion, stating that his finding was without basis either in fact or in the law.

## II.

¶5. The appellant asserts that the Chancellor abused his discretion in awarding visitation rights to the paternal grandparents of the child and has deprived her of "her parental rights to control the insinuation of the Galloways into the relationship between herself and Chase." Furthermore, the appellant claims that the Chancellor failed to consider "that there was no long, close relationship between Chase and the Galloways" and that "the Galloways intentionally refused to consult with Deana . . . concerning such intensely familial matters as the dressing of a child, the religious training of a child, bedtime clothing, and such matters." We conclude, however, that the evidence in the record does not support these allegations.

¶6. This Court will not disturb the findings of a Chancellor when supported by substantial evidence unless the Chancellor abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous. ***Worley v. Jackson***, 595 So. 2d 853, 855-56 (Miss. 1992); ***Veselits v. Cruthirds***, 548 So. 2d 1312, 1316 (Miss. 1989); ***Milam v. Milam***, 509 So. 2d 864, 866 (Miss. 1987); ***Harkins v. Fletcher***, 499 So. 2d 773, 775 (Miss. 1986); ***Torrence v. Moore***, 455 So. 2d 778 (Miss. 1984).

¶7. Section 93-16-3 of the Mississippi Code Annotated states, in pertinent part:

(1) Whenever a court of this state enters a decree or order awarding custody of a minor child to one (1) of the parents of the child or terminating the parental rights of one (1) of the parents of a minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child's parents who was not awarded custody or whose parental rights have been terminated or who has died may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with such child.

(2) Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court *may grant visitation rights to the grandparent, provided the*

*court finds:*

*(a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and*

*(b) That visitation rights of the grandparent with the child would be in the best interests of the child.*

Miss. Code Ann. § 93-16-3 (1972) (emphasis added).

¶8. Section 93-16-3(3) further provides that "the term 'viable relationship' means a relationship in which the grandparents or either of them have voluntarily and in good faith supported the child financially in whole or in part for a period of not less than six (6) months before filing any petition for visitation rights with the child *or* the grandparents have had frequent visitation including occasional visitation with said child for a period of not less than one (1) year." Miss. Code Ann. § 93-16-3(3) (1972) (emphasis added).

¶9. The paternal grandfather of the child, Harold Galloway, testified that prior to the separation of Deana Settle and his son, he and his wife provided financial support for his son's family. This financial support included the use of their gas credit card as well as monetary support. Additionally, the Galloways had visited with the child on a regular basis both prior to and after the separation. Thus, there was a substantial basis for the Chancellor's finding of a "viable relationship between the grandparents and the minor child."

¶10. Appellant expresses her concern that the Galloways may have had Chase wear a dress and diapers and that he experiences emotional problems after returning from visitations with the Galloways as well as problems wetting the bed. Harold Galloway testified that he and his wife kept some large t-shirts that the boys used as nightshirts. He also explained that Chase had a problem wetting the bed when he was three years old, and during the process of being potty trained, Chase was allowed, at his request, to put on "Pull-ups" which were used for children during that phase. He stated that the emotional problems that he has noticed occur when the child cries and states that he wants to stay with the Galloways when he is taken back to his mother. Mrs. Galloway also agreed to this account of the child's behavior.

¶11. Furthermore, during visitation with the Galloways, the child is taken on trips to amusement parks, movies, and beaches. He is allowed to play with the Galloways' other grandson, who is seven weeks younger than Chase, in their playground facility, rides his bicycle and plays basketball with Harold Galloway. The Galloways maintain a bedroom that he shares with the other grandchild, a toy room, toy box, his own full wardrobe, and a closet for Chase's benefit. The Galloways also video tape family events that occur at the house during Chase's visitation and send the tapes to Richard Galloway. During these events, Chase is allowed to speak into the video camera to send messages to his father while his father is away from home. One of these events included a birthday party for Richard Galloway, at which Chase and the other grandson blew out the candles on Richard Galloway's birthday cake, opened gifts, and sang "Happy Birthday" to Chase's absent father.

¶12. The Chancellor considered this evidence, and found that it was in the best interest of the child to

grant the Galloways visitation with their grandson, "in that without this contact with the grandparents there would be little exposure or knowledge of the child's father." The court stated that "it is through these grandparents that Chase is exposed to his father with the exchange of video tapes and other means by which the grandparents utilize during visitations with the child. 'But for,' this contact the child would have little exposure to his dad as a result of the father being in the United States Navy." Considering the testimony presented, the Chancellor's finding is based upon substantial credible evidence within the record.

¶13. It is of concern to this Court, however, that the Chancellor's grant of visitation on every other weekend may be excessive. Natural grandparents have no common-law "right" of visitation with their grandchildren. *Matter of Adoption of a Minor*, 558 So. 2d 854, 856 (Miss. 1990). Such a right must come from a legislative enactment. *Id.*; *Olson v. Flinn*, 484 So. 2d 1015, 1017 (Miss. 1986). Although the Mississippi Legislature created this right by enacting § 93-16-3, it is clear that natural grandparents do not have a right to visit their grandchildren that is as comprehensive to the rights of a parent.

¶14. It is apparent from the record that the Chancellor's finding was based primarily on the inability of the father to exercise his parental visitation rights as a result of his membership in the United States Navy. The Chancellor also ruled that the paternal grandparents' visitation is to be concurrent with any visitation exercised by the father. Considering these factors, we cannot conclude that the Chancellor abused the wide range of discretion he is afforded on matters of custody and visitation.

¶15. **AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**