736 So.2d 1037 (1999)
In the Matter of the Adoption of J.J.G.
C.L.M., Jr., and J.B.M.
v.
D.J.G. and A.L.G.
No. 97-CA-01589-SCT.
Supreme Court of Mississippi.
March 25, 1999.
James Coleman Rhoden, Columbia, Attorney for Appellants.
James Dewitt Johnson, Hammond, Martha Renee McBride Porter, Columbia, Attorneys for Appellees.
EN BANC.
SULLIVAN, Presiding Justice, for the Court:

STATEMENT OF THE CASE AND THE FACTS
¶ 1. Appellants C.L.M. and J.B.M. are the natural maternal grandparents of the minor child J.J.G. Appellees D.J.G. and A.L.G. are the natural parents of the minor child. D.G.B. is the natural paternal grandmother of the minor child.
¶ 2. On August 4, 1997, the paternal grandmother D.G.B. filed a Petition for Adoption in the Chancery Court of Marion County, Mississippi, asking the court to award physical custody of the minor child to her. D.J.G. and A.L.G., the child's natural parents, joined in the petition and consented to the adoption.
¶ 3. On August 7, 1997, the maternal grandparents C.L.M and J.B.M. filed an Objection to Adoption of the minor child claiming (1) the adoption is merely an attempt to defeat their May 28, 1997 petition for the award of grandparents' visitation, and (2) the minor child's mother D.J.G. is not fully informed as to the consequences of the adoption.
¶ 4. On November 6, 1997, the paternal grandmother D.G.B. filed a Motion to Dismiss Objection and Visitation Claims. In said motion it was clarified that (1) D.G.B. had been granted joint physical custody of the minor child, along with the natural parents, D.J.G. and A.L.G., on March 14, 1997, and (2) C.L.M. and J.B.M. had been granted interim visitation with the minor child as of August 6, 1997. In this motion, the paternal grandmother D.G.B. and the natural parents, D.J.G. and A.L.G., argued the child's maternal grandparents C.L.M. and J.B.M. lack standing to petition the court for visitation rights. The lower court agreed, and on November 17, 1997, a Judgment Granting Petitioner's Motion to Dismiss Respondents' Objection was entered finding C.L.M. and J.B.M. had no standing to enter this matter and granting C.L.M. and J.B.M. the right to this interlocutory appeal.
*1038 ¶ 5. The issue now before the Court is whether the natural grandparents of a minor child have standing to object to the adoption of that child.

LEGAL ANALYSIS
¶ 6. The best interest of the child is a polestar consideration in the granting of any adoption. Muse v. Hutchins, 559 So.2d 1031, 1035 (Miss.1990). Appellants C.L.M. and J.B.M. argue it would be in the best interest of the minor child to liberally construe the rules of standing in this case. Appellants assert that as natural grandparents they have an interest in the welfare of the minor child. Appellants further assert they have received interim visitation with the child pursuant to a previous court order and they have a vested interest in protecting these visitation rights.
¶ 7. Appellants C.L.M. and J.B.M. attempt to distinguish the case at hand from Olson v. Flinn, 484 So.2d 1015 (Miss.1986) (holding that an adoption by a step parent after the death of one of the natural parents operated to terminate visitation rights of the natural grandparents except as to the natural parent who is the spouse of the adopting parent). Appellants argue that in Olson the natural grandparent had petitioned for, but had not yet been granted, court-ordered visitation rights and consequently was not entitled to notice of the subsequent adoption of her grandchildren. Appellants contend that in the instant case they had not only petitioned the court for visitation but they had been granted interim visitation. Appellants further claim that if they were entitled to notice of the adoption, they should be entitled to object to the adoption.
¶ 8. Appellees D.J.G. and A.L.G. argue that while the facts of Olson are not analogous to those here, Olson lends support to their argument that this Court should strictly follow statutory law with regard to adoption and grandparents' visitation rights. Appellees urge this Court to strictly follow statutory law in the case subjudice even though doing so will mean natural grandparents lack standing to object to the adoption of their grandchild(ren).
¶ 9. The question presented to the Court in Olson was "Does the adoption of a child terminate the grandparents' legal rights to visitation under § 93-16-3?" Olson, 484 So.2d at 1017. In Olson, the Court affirmed the termination of the natural grandparents' rights to visitation. We recognized the harshness of our ruling and encouraged visitation on a voluntary basis but held that "under the statutes in question an adoption by a step parent after the death of one of the natural parents terminates visitation rights of those natural grandparents, except as to the natural parent who is the spouse of the adopting parent." Id. at 1018.
¶ 10. The question presented in Olson was again considered by this Court in Howell v. Rogers, 551 So.2d 904 (Miss. 1989). In Howell, we noted that in response to Olson, the Legislature amended § 93-16-3, and consequently, we held that an adoption by a step parent after the termination of parental rights of one of the natural parents does not terminate the visitation rights of the natural grandparents. Howell, 551 So.2d at 905-06.
¶ 11. Appellees contend that while Howell does not deal with the issue presently before the Court, the case does indicate this Court's position that adoption and visitation are two separate and independent actions. While this Court does recognize that adoption is separate and independent from grandparents' visitation rights, we also recognize that grandparents' visitation rights may be affected, even terminated, by adoption.
¶ 12. Appellants analogize the instant case to Matter of the Adoption of a Minor, 558 So.2d 854 (Miss.1990) (holding paternal grandparents had no standing to challenge the adoption of the minor child where termination of parental rights was not made due to parents' abandonment or unfitness *1039 to have custody of the child and where neither of the legal adoptive parents was a natural parent of the child). In Matter of the Adoption of a Minor, the natural paternal grandparents filed a petition to set aside the decree of adoption and sought visitation rights with the minor grandchild. 558 So.2d at 855. In that case, we stated it would have been far more preferable for the court to have appointed a guardian ad litem to advise the court as to the granddaughter's best interest where the daughter, also a minor, and the granddaughter were living in the grandparent's home. Id. at 857. We noted that such a factual scenario affords too much opportunity for overreaching. Id.
¶ 13. Appellants assert that D.J.G., mother of the minor child and daughter of the Appellants, is residing on property owned or controlled by D.G.B., the paternal grandmother who filed the petition for adoption. Appellants suggest that because D.J.G. resides on property owned or controlled by D.G.B., the facts in this case likewise afford too much opportunity for overreaching. We disagree.
¶ 14. In Matter of the Adoption of a Minor, the adopting grandmother had previously been appointed guardian over the natural mother and had, in fact, been legal guardian of the natural mother when the adoption proceeding was filed and the decree entered. It was in this factual circumstance that the Court stated a guardian ad litem should have been appointed. Furthermore, in Matter of the Adoption of a Minor, we upheld the dismissal of the grandmother's claim for visitation rights and refused to set aside the adoption despite our concerns.
¶ 15. Also, in Matter of the Adoption of a Minor, the Court found that the Grandparents' Visitation Statute does not grant natural grandparents a statutory right to visit an adopted child where neither of the legal (i.e., adoptive) parents was a natural parent of the child. In other words, we concluded that the natural grandparents lacked standing to seek visitation with the minor child because they had no statutory right to such visitation and we upheld the adoption.
¶ 16. However, we did express concern over the adoption proceeding stating "a great deal of sympathy must be extended to any grandparents who are prevented from visiting their grandchild, and indeed the child may be the greatest loser." Id. at 856-57 (quoting Olson v. Flinn, 484 So.2d at 1018). "Be that as it may, neither the chancery court nor this Court on our own has the authority to bestow visitation `rights' upon a grandparent." Id. at 857.
¶ 17. Appellees ask this Court to also consider Muse v. Hutchins, 559 So.2d 1031 (Miss.1990) (holding that maternal grandparent's visitation rights were terminated by paternal grandparent's adoption of the minor child following the death of the child's mother). In Muse, unlike in the instant case, the paternal grandparent's adoption of the minor child had already been finalized. The Court reasoned that because the adoptive parent (the paternal grandparent) was not a natural parent of the minor children and the adoption terminated the rights of the natural parents, the Grandparents' Visitation Rights Act, Miss. Code Ann. §§ 93-16-1 to-7 (1994), did not apply. Muse, 559 So.2d at 1033-34. The Court concluded that "[w]hatever rights to visitation [appellant maternal grandmother] may have acquired under the Grandparents Visitation Rights Act were terminated by the decree of adoption." Id. at 1034.
¶ 18. The case sub judice provides the Court with the opportunity to determine whether natural grandparents have a statutory right to object to the adoption of their natural grandchild(ren). It should be noted that the facts of the instant case differ from those previously considered by this Court in Matter of the Adoption of a Minor and Muse because in both of those cases the adoption had already been finalized. However, both of these cases recognize that grandparents' visitation rights *1040 may be terminated as a consequence of an adoption proceeding.
¶ 19. In the case sub judice, both of the natural parents are adults, and both consented to the adoption of the minor child. The law presumes natural parents will love their children most and will act in accordance with their children's best interests. See Miss.Code Ann. § 93-13-1 (1994) (it is in the best interest of children that they be placed in the custody of their natural parents absent some clear showing to the contrary). Accordingly, the law governing adoption proceedings places natural parents in a position superior to other third parties, even blood relatives. See Miss. Code Ann. § 93-17-7 (1994) (only parents have a statutory right to object to the adoption of a minor child). See also Miss. Code Ann. § 93-17-5 (1994) (natural parents are necessary parties to an adoption proceeding but natural grandparents or other relatives are not). In the case sub judice, the natural parents agreed the best interests of their child would be served by placing their child in the custody of his or her paternal grandmother.
¶ 20. Finding no statutory authority granting Appellants standing to object to the adoption of the minor child, we affirm the judgment of the lower court.
¶ 21. AFFIRMED.
PRATHER, C.J., McRAE, SMITH AND WALLER, JJ., CONCUR.
BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J.
MILLS, J., NOT PARTICIPATING.
BANKS, Justice, dissenting:
¶ 22. I cannot agree with the majority's holding that the maternal grandparents in this action do not have standing to object to the adoption of the minor child. Accordingly, I respectfully dissent.
¶ 23. In my view the majority is correct in finding that this action is distinguished from the facts in both Matter of the Adoption of a Minor, 558 So.2d 854 (Miss.1990), and Muse v. Hutchins, 559 So.2d 1031 (Miss.1990), by the fact that in those cases the adoptions had become final before the objection was filed. The majority goes on to hold that, because the natural parents are consenting parties to the adoption and because the adoption statute does not provide that grandparents are necessary parties to the adoption, the grandparents have no standing to object to the adoption. I disagree.
¶ 24. This is not a situation in which grandparents claim, after the fact, that they should have been notified of a pending adoption; here, the grandparents are asking to be heard during the pendency of the proceeding. The fact that a litigant is not a necessary party to an action does not mean that he does not have standing to enter into the action and be heard. There is nothing in the adoption statute which would prevent these grandparents from entering an objection to the adoption. Miss.Code Ann. § 93-17-1 et seq. Parties may "`sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law.'" Dunn v. Mississippi State Dept. of Health, 708 So.2d 67, 70 (Miss.1998) (quoting Fordice v. Bryan, 651 So.2d 998, 1003 (Miss.1995)). I am of the opinion that grandparents have a sufficient interest in their grandchildren to allow them to be heard in an adoption proceeding. Cf.C.S. v. S.H., 671 So.2d 260, 265 (Fla.Ct.App.1996) (holding that petitioners, relatives of the child, had standing to intervene in an adoption where their interests would be adversely affected by the proceeding). The interest may not be such as to warrant notice, but it is enough to allow them to intervene if they become aware of the proceedings before a final judgment is entered, especially in light of our polestar considerationthe best interest of the child.
*1041 ¶ 25. While the majority reads Miss. Code Ann. § 93-17-7 (1994) as giving "only parents ... the statutory right to object," my view of that statute is that a parental objection is the only objection given veto power absent the prescribed findings concerning the objecting parent. I do not read this statute as limiting the right to object to parents but rather one giving much greater power over the proceedings to a parental objector.
¶ 26. This action is also distinguishable from Smith v. Malouf, 722 So.2d 490, 499 (Miss.1998), in which this Court held that grandparents did not have a legally cognizable claim for recovering damages for an unlawful conspiracy to place their son's unborn child up for adoption. The grandparents in Smith were claiming recovery for a wrong done to their son and the worry which they experienced as a result thereof, a claim which this Court rejected in Downtown Grill, Inc. v. Connell, 721 So.2d 1113, 1121-23 (Miss.1998). Here the maternal grandparents had filed a petition for visitation prior to the commencement of the adoption proceedings. They also ask, in the objection to the adoption, that they be the adopting grandparents.
¶ 27. The chancellor's ruling dismissed the objection to the adoption and not, explicitly, the petition for visitation. The majority's discussion regarding grandparents' visitation rights may be unnecessary to the disposition of this action. Because there is some doubt, however, as to how the chancellor will treat his order, especially after we have discussed the issue, I write the following in response to the majority's discussion.
¶ 28. Grandparents' standing to petition for visitation is governed by Miss.Code Ann. §§ 93-16-3 & -7 (1994). Section 93-16-3 provides in pertinent part:
(1) Whenever a court of this state enters a decree or order awarding custody of a minor child to one (1) of the parents of the child or terminating the parental rights of one (1) of the parents of a minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child's parents who was not awarded custody or whose parental rights have been terminated or who has died may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with such child.
(2) Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court may grant visitation rights to the grandparent, provided the court finds:
(a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and
(b) That visitation rights of the grandparent with the child would be in the best interests of the child.
. . . .
At the very least, the maternal grandparents herein have standing under subsection (2) to petition for visitation and show that a viable relationship exists with the child and that visitation with the maternal grandparents would be in the best interests of the child.
¶ 29. It is only after an adoption becomes final that § 93-16-7 may operate to prevent grandparents from petitioning for visitation as it did in Matter of Adoption of a Minor, 558 So.2d at 855, and in Muse, 559 So.2d at 1033. However, § 93-16-7 is not applicable in this case. Section 93-16-7 provides that:
This chapter shall not apply to the granting of visitation rights to the natural grandparents of any child who has been adopted by order or decree of any court unless: (a) one (1) of the legal parents of such child is also a natural *1042 parent of such child; or (b) one (1) of the legal parents of such child was related to the child by blood or marriage prior to the adoption. This chapter shall apply to persons who become grandparents of a child by virtue of adoption.
(emphasis added). In this case, the paternal grandmother, who would be the legal parent after the adoption, is also related to the child by blood. Even after the adoption is finalized § 93-16-7 would not prevent the grandparents from petitioning for visitation.
¶ 31. For the foregoing reasons, I would reverse the judgment of the chancellor with respect to the issue of standing to contest the adoption, and remand this case for further proceedings.
PITTMAN, P.J., JOINS THIS OPINION.